UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMIE MEADE,

        Plaintiff,

v.

MARY BERGHUIS, *et al.*,

        Defendants.

                                      /

Case No. 1:08-cv-517

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on defendants' motion for summary judgment (docket no. 13).

**I.    Background**

**A.    Defendants**

Plaintiff has filed a complaint against ten defendants: Warden Mary Berghuis of the E. C. Brooks Correctional Facility (LRF); LRF Deputy Warden Rick Smith; LRF Deputy Warden Mark Sutherby; LRF assistant resident unit supervisor (ARUS) Carole Hughes; LRF resident unit manager (RUM) Vernelia Shackleford; LRF grievance coordinator Jeff Minnerick; LRF assistant deputy warden (ADW) Bobbie Smith; Warden Carole Howes of the Lakeland Correctional Facility (LCF); LCF mailroom clerk Jennifer Palmer; and LCF RUM Richard Forester.

### B. Plaintiff's allegations

#### 1. Cruel and unusual punishment by LRF personnel

Plaintiff alleges that he suffers from sinusitis and a heart murmur. Compl. at ¶ 3. He requested tobacco-free housing when transferred to LRF on April 10, 2007. *Id.* LRF's Health Care Services denied the request. *Id.*[1] On April 11th, plaintiff sent a kite to ADW Sutherby regarding his health concerns and being in a housing unit exposed to environmental tobacco smoke (ETS). *Id.* at ¶ 4. ARUS Hughes denied the request for tobacco-free housing on April 14th. *Id.* at ¶ 5. Plaintiff "filed his first complaint" (i.e., grievance) about exposure to ETS on April 13th; ADW Bobbie Smith "heard" the complaint on April 26th and "refused" to act. *Id.* at ¶ 6. On April 29th, plaintiff appealed Hughes' decision, but Grievance Coordinator Minnerick "refused to process" the appeal. *Id.* at ¶ 7.

Nevertheless, plaintiff was moved to a tobacco-free housing unit (the Allegan unit) a few days later on May 9th. *Id.* at ¶ 8. However, prisoners smoked in the unit and exposed him to ETS. *Id.* Seven months later plaintiff wrote to Warden Berghuis on December 9th, requesting her to enforce the law regarding ETS exposure, but defendants failed to act. *Id.* at ¶ 11. Grievance Coordinator Minnerick rejected plaintiff's December 15th "complaint" about high levels of ETS as duplicative. *Id.* at ¶ 13. Plaintiff alleges that LRF staff subjected him to 8 months of ETS exposure in violation of his Eighth Amendment rights. *Id.* at ¶ 14.

#### 2. Retaliation by Warden Berghuis and Grievance Coordinator Minnerick

Plaintiff alleges that on December 19, 2007, Warden Berghuis placed him on modified grievance access in retaliation for plaintiff's abuse of the grievance filing process (i.e.,

---

[1] None of the LRF Health Care Staff are defendants in this action.

plaintiff filed three grievances). *Id.* at ¶ 16. Plaintiff alleges that he filed a "complaint" against Warden Berghuis and Grievance Coordinator Minnerick for retaliation on December 19, 2007. *Id.* at ¶ 17. Plaintiff was transferred to LCF the next day. *Id.* at ¶ 18. Plaintiff further alleges that Warden Berghuis continued to retaliate against him by extending his modified access on January 9, 2008. *Id.* at ¶ 19. Plaintiff alleges that these acts constituted retaliation and due process violations by Warden Berghuis and Grievance Coordinator Minnerick.

### 3. Retaliation and denial of access to the court by LCF staff

Plaintiff alleges that on February 8, 2008, LCF mailroom clerk Jennifer Palmer rejected certain mail sent to plaintiff by an individual named Pauline Thompson. *Id.* at ¶ 22. The mail consisted of what plaintiff refers to as "legal materials," and which he describes as "Tobacco Free Housing Applications for various prisoners at LRF, Minor Misconduct violations and Hearing Reports for various LRF prisoners, and LRF store orders and receipts." *Id.* Palmer's notice of rejection stated that plaintiff had "no law suit pending to require this type of information," and cited MDOC Policy Directive 05.03.118 ¶ F 3 as authority for the rejection. *Id.* Plaintiff alleges that Warden Howes and Palmer "failed to act" when he complained to them in a letter dated February 8, 2008. *Id.* at ¶ 23.

LCF Grievance Coordinator Winchester (not a defendant in this action) failed to forward plaintiff a step I grievance form as requested on February 11, 2008. *Id.* at ¶ 24. On February 22, 2008, RUM Forester held an administrative hearing upholding Palmer's rejection of the mail, which plaintiff claims retaliated against him and impeded his access to the courts. *Id.* at ¶ 25. Finally, on February 23, 2008, Grievance Coordinator Winchester failed to provide plaintiff with a requested Step I grievance form to appeal RUM Forester's decision. *Id.* at ¶ 26. Based on

these allegations, plaintiff claims that LCF Warden Howes, mailroom clerk Palmer and RUM Forester retaliated against plaintiff and impeded his access to the courts.

### 4. Constitutional challenge to policy directive

Finally, in ¶ 29 of his complaint, plaintiff alleges that MDOC Policy Directive 05.03.118, "Prisoner Mail," is "unconstitutionally vague and overly-broad, because the policy, while not denying complete access to legal materials (i.e. from attorney), prohibits legal materials that are public records that have been acquired by family and friends through the proper Michigan Freedom of Information Act (FOIA) procedures (Michigan prisoners are exempt from all FOIA request, including criminal documents), violating the First and Fourteenth [Amendments] to the U.S. Constitution."

## II. Legal Standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v.*

4

*Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).

"In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. Discussion

#### A. Plaintiff's claims against LCF Warden Howes and LRF Grievance Coordinator Minnerick.

Warden Howes seeks summary judgment on the ground that she had no personal involvement in the alleged constitutional violations. Plaintiff does not allege that Warden Howes personally participated in the rejecting of the mail. Plaintiff's complaint merely alleges that after mailroom clerk Palmer rejected the legal materials, he wrote a letter to Warden Howes, the person "ultimately responsible" for the operation of LCF. Comp. at ¶ 38. Plaintiff's claim against Warden Howes is based upon her supervision of employees at the LCF. It is well settled that a § 1983 action

cannot be based on a theory of respondeat superior. *See Monell v. New York City Dep't. of Social Services*, 436 U.S. 658, 691 (1978); *Taylor v. Michigan Dep't. of Corrections*, 69 F.3d 76, 80-81 (6th Cir. 1995). In order to hold a supervisor liable under § 1983, "[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Plaintiff has failed to state a claim against the warden arising from the mail rejection. Accordingly, Warden Howes is entitled to summary judgment with respect to plaintiff's mail rejection claim.

Similarly, plaintiff does not allege that Grievance Coordinator Minnerick engaged in any activity that could be considered a federal constitutional violation. Mr. Minnerick rejected or denied plaintiff's greivances. "The mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Correctional Medical Services*, 73 Fed. Appx. 839, 841 (6th Cir. 2003). *See, e.g., Martin v. Harvey*, 14 Fed. Appx. 307, 309 (6th Cir. 2001) (observing that the denial of an appeal of a grievance complaining of inadequate medical care is not the same as the actual denial of a request to receive medical care"). Accordingly, Grievance Coordinator Minnerick is entitled to summary judgment on plaintiff's claims arising from the rejection or denial of his grievances.[2]

---

[2] The court notes that in his response, plaintiff seeks to voluntarily dismiss both Warden Howes and Grievance Coordinator Minnerick, admitting that he "has limited evidence to directly implicate Defendants Howes and Minneric [sic] and hold them liable for a constitutional violations [sic] against Plaintiff." Response at 5.

### B. Cruel and unusual punishment

Next, plaintiff alleges that LRF staff, whom he identifies as Warden Berghuis, ADW Sutherby, ARUS Hughes, ADW Bobbie Smith, and ARUS Shackelford, subjected him to cruel and unusual punishment by failing to transfer him to a tobacco-free environment. It is well established that an inmate has a cause of action under 42 U.S.C. § l983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (l976). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component requires the infliction of serious pain. *See Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, deliberate indifference, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

#### 1. ARUS Shackleford

Plaintiff does not allege that defendant Shackleford engaged in any wrongdoing related to this Eighth Amendment claim. Plaintiff's only allegation against this defendant is that at a warden's forum, when asked if plaintiff's housing unit was "Tobacco-Free Housing," Shackleford responded that "no wing in Allegan unit was Tobacco-Free Housing." Compl. at ¶ 10. This

7

allegation is not a fair representation of the actual response, which is set forth in a memorandum of the October 30, 2007 forum (provided by plaintiff) as follows:

> Question: Is D wing considered Tobacco Free Housing?
>
> Answer: No wing is considered Tobacco Free Housing; ALL prisoners on ALL wings are **prohibited** from smoking anywhere inside the unit. Non-Smokers lock with Non-Smokers and are not allowed to purchase or possess tobacco.

Memorandum of Prisoner Unit Representatives Meeting (Oct. 30, 2007) (docket no. 22-8). Plaintiff does not allege that ARUS Shackleford was involved in any decision to place plaintiff. ARUS Shackleford simply advised the prisoners of the smoking policy at the facility. Accordingly, ARUS Shackleford is entitled to summary judgment.

### 2. Warden Berghuis, ADW Sutherby, ARUS Hughes and ADW Bobbie Smith

Plaintiff has failed to demonstrate either the objective or the subjective prong of an Eighth Amendment claim with respect to these defendants. Plaintiff sent the LRF healthcare department a symptom kite dated April 12, 2007, stating: that he suffered from chronic sinusitis, an infection, and inflamed membranes; that he has problems breathing; and that he wanted a "special medical detail for a [sic] non-smoking housing." Plaintiff's Exh. B (docket no. 22-3). In response to this kite, the health care department advised plaintiff that Claratin is available at the store to help with his sinus pain and congestion, that Tylenol is available at the store for additional pain relief needs, and that "[a]ll housing units are supposed to be non-smoking." *Id*. There is no record of plaintiff suffering from any serious medical condition.

Plaintiff filed a grievance on April 13, 2007 complaining that he was dissatisfied with ARUS Hughes' response to his request for tobacco-free housing, i.e., that "it would take a couple

of weeks to be moved to the non-smoking unit." Plaintiff's Exh. A (docket no. 22-2). The record reflects that plaintiff made a misrepresentation on a tobacco-free housing form dated April 12, 2007, by indicating that he had a "medical detail or special accommodation for placement in tobacco-free housing." Plaintiff's Exh. D (docket no. 22-5). ADW Hughes denied the request on April 13, 2007, because plaintiff had purchased cigars on April 3, 2007. *Id.*

The grievance was denied by ADW Bobbie Smith on April 26, 2007 for the following reasons:

> The grievant purchased cigars on 4/3/07. The store purchases are checked for all prisoners who request tobacco-free housing to verify that they do not possess tobacco products. Prisoners are not allowed to purchase or possess tobacco products while housed in tobacco-free housing areas. Prisoner Meade will be eligible for placement in Allegan Unit on 5/4/07. No violations found.

*Id.*

In a tobacco-free housing form dated May 7, 2007, plaintiff did not indicate that he had a "medical detail or special accommodation for placement in tobacco-free housing." Plaintiff's Exh. F (docket no. 22-7). Deputy Warden Sutherby approved tobacco-free housing that same day. *Id.* The grievance was considered resolved in the Step II grievance response issued on May 21, 2007, which noted that plaintiff "does NOT and did NOT have a 'medical detail or special accommodation for placement in tobacco-free housing' as he marked on the Tobacco-Free housing form he completed on 4/12/07," and that plaintiff purchased tobacco products as recently as April 3, 2007. *Id.* It was also noted that plaintiff's previous housing assignment, from October 3, 2002 through April 11, 2007 was not in tobacco-free housing. *Id.* Finally, the responder found that plaintiff was placed in tobacco-free housing on May 9, 2007, which was within a reasonable time after his request was submitted. *Id.*

9

In a letter dated December 9, 2007, and addressed to Warden Berghuis, Deputy Warden Rick Smith, and ADW Sutherby, plaintiff complained that his residence in the Allegan Unit was not tobacco-free, and that smokers are locked with smokers, and non-smokers are locked with non-smokers. Plaintiff's Exh. I (docket no. 22-10). Plaintiff has submitted affidavits from several prisoners (Kevin Walker, Floyd Crum, Henry Martinez, Tyrant McGee, Phil Czito, Tim McLaughlin, Jason Mingard, and Marcos Espinosa, Randy D. Vincent), all of whom make similar statements to the effect: that they are housed in Allegan Unit; that they are non-smokers or approved for tobacco-free housing; that prisoners in Allegan Unit are allowed to purchase cigarettes and matches; and that there is cigarette smoke in the unit. Plaintiff's Exh. K (docket no. 22-12); Plaintiff's Exh. L (docket no. 22-13). Bruce R. Moilanen stated in an affidavit that he is a non-smoker assigned to Allegan Unit, that A-wing prisoners receive tobacco products in their weekly store orders, and that a mixture of smokers and non-smokers are housed in the unit. Plaintiff's Exh. K (docket no. 22-12). Derrick Garner stated in his affidavit that he signed a tobacco-free housing form, stated that he was a smoker, has been placed in Allegan Unit since June 2007, and that he is allowed to purchase cigarettes and smoke in his cell because he designated himself as a smoker. Plaintiff's Exh. L (docket no. 22-13).

On December 11, 2007, plaintiff completed a health care request, for an examination because he was extremely tired, had trouble breathing, trouble swallowing, a heart murmur, high cholesterol, and sinusitis. Plaintiff's Exh. J (docket no. 22-11). In response, healthcare noted that plaintiff was not on medication for any of these conditions, and advised plaintiff to schedule a evaluation. *Id.*

In a memorandum to the grievance coordinator dated December 27, 2007, ADW Sutherby pointed out that A and B wings of the Allegan Unit are tobacco-free, while prisoners housed in C and D wings are placed in groups of tobacco-free and non tobacco-free prisoners. *See* docket no. 22-15. However, all prisoners who violate the non-smoking rules, as well as prisoners requesting tobacco-free housing who violate the tobacco-free housing rules, are disciplined. *Id.*

Plaintiff's affidavits establish that some prisoners violate both the tobacco-free housing rules and the smoking prohibition in the Allegan Unit. However, the fact that some prisoners violate these rules does not create an Eighth Amendment cause of action against defendants Warden Berghuis, ADW Sutherby, ARUS Hughes and ADW Bobbie Smith. Plaintiff presents no objective medical evidence to demonstrate that he suffered from a serious medical condition requiring a tobacco-free environment. The healthcare department found no medical reason to assign plaintiff to a tobacco-free environment. The general smoking prohibition would address plaintiff's general health concerns about ETS. Plaintiff's purchase of cigars eight days before he requested a transfer to tobacco-free housing is entirely inconsistent with a person who allegedly suffers from serious medical conditions for exposure to ETS.

In addition, plaintiff has failed to demonstrate the subjective intent necessary to support an Eighth Amendment claim against defendants. Plaintiff's alleged conditions of sinusitis and a heart murmur would not be obvious to alert these four defendants of the need for tobacco free housing. Plaintiff was granted the opportunity to reside in a unit that was designated tobacco free housing, despite the fact that he had neither a special accommodation for the housing nor obvious symptoms requiring such housing when eligible. There is no evidence that plaintiff suffered any adverse medical consequences from having to wait one month for a transfer to tobacco-free housing.

11

Accordingly, Warden Berghuis, ADW Sutherby, ARUS Hughes and ADW Bobbie Smith are entitled to summary judgment on plaintiff's Eighth Amendment claim.

### C. Claims against Warden Berghuis

Plaintiff alleges that Warden Berghuis retaliated against him and violated his due process rights by placing plaintiff on modified access to the grievance procedure.

#### 1. Retaliation

To prove a First Amendment retaliation claim, plaintiff must establish three elements: "1) the plaintiff engaged in activities protected by the Constitution or statute; 2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) that this adverse action was taken at least in part because of the exercise of the protected conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). *See also Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To establish the causation element of a retaliation claim, "the plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith*, 250 F. 3d at 1037, *citing Mount Health City School District Board of Education v. Doyle*, 429 U.S. 274, 287 (1977). "[B]ecause prisoner retaliation claims are easily fabricated, and accordingly pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration, we are careful to require non-conclusory allegations." *Bennett v. Goord*, 343 F.3d 133, 137 (2nd Cir. 2003) (internal quotation marks omitted).

Plaintiff cannot maintain a retaliation claim because there was no adverse action taken against him. *See Smith*, 250 F.3d at 1037; *Thaddeus-X*, 175 F.3d at 394. Placing a prisoner on modified access does not constitute adverse action that would deter a person of ordinary firmness

12

from exercising his protected rights. *See Kennedy v. Tallio*, 20 Fed. Appx. 469, 471 (6th Cir. 2001); *Corsetti v. McGinnis*, 24 Fed. Appx. 238, 241 (6th Cir. 2001). Placement on modified access did not deprive plaintiff of the ability to file proper grievances. Rather, placement on modified access merely enabled prison officials to screen his grievances prior to filing (e.g., to determine whether the issue is grievable, non-frivolous and non-duplicative). *Kennedy*, 20 Fed. Appx. at 471. *Corsetti*, 24 Fed. Appx. at 241 ("[m]odified access . . . "merely requires the prisoner to obtain permission from the grievance coordinator to file a grievance").

### 2. Due process

Similarly, plaintiff's claim that placement on modified access violated his due process rights is without merit. The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Michigan Department of Corections.*, 128 Fed. Appx. 441, 445 (6th Cir. 2005); *Young v. Gundy*, 30 Fed. Appx. 568, 569-70 (6th Cir. 2002). Because plaintiff has no due process right to file a prison grievance, he cannot state a claim for relief on this basis. Accordingly, Warden Berghuis is entitled to summary judgment on both claims.

### D. Retaliation and denial of access to the court claim against LCF staff

Next, plaintiff contends that LCF's mailroom clerk Jennifer Palmer prevented his access to the courts by rejecting certain legal documents sent to him. He further contends that RUM Forester both retaliated against plaintiff and impeded his access to the courts by upholding the mail rejection.

### 1. Access to the courts

Plaintiff contends that he was denied access to the court's by Ms. Palmer's rejection of legal materials and RUM Forester's decision upholding that rejection. Defendant seeks summary judgment on the basis that plaintiff has not demonstrated actual injury from their actions. The court agrees. "It is beyond dispute that the right of access to the courts is a fundamental right protected by the Constitution," *Graham v. National Collegiate Athletic Association*, 804 F.2d 953, 959 (6th Cir.1986), which arises from the First and Fourteenth Amendments, *Lewis v. Casey*, 518 U.S. 343, 354 (1996). The right of access to the courts ensures that the access will be "adequate, effective, and meaningful." *Bounds v. Smith*, 430 U.S. 817, 822 (1977). To state a claim for interference with access to the courts, a prisoner must show actual injury connected to the pursuit of a non-frivolous legal claims challenging their convictions or conditions of confinement. *Lewis*, 518 U.S. at 355-56; *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005). "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey*, 420 F.3d at 578.

Plaintiff's access to the court claim arises from the confiscation of certain information relating to other prisoners. Ms. Palmer described the material as "tobacco-free housing applications for various prisoners at LRF & minor misconduct violations and hearing reports for various prisoners - no law suit pending to require this type of information." Administrative Hearing Report (docket no. 14-7). At the hearing, RUM Forester determined that pursuant to MDOC policy, plaintiff was not entitled to possess such material: these other prisoners were not co-defendants in a pending legal case, MDOC Policy Directive 04.07.112; prisoners are not allowed to possess documents that contain personal information of other prisoners in the absence of a legal assistance

14

agreement between them; the material is a threat to security and good order of the facility because of the personal information contained in the documents; and, the minor misconduct orders do not consist of a final opinion or order as defined under the Policy Directive. *Id.* Plaintiff has failed to show that the confiscation of these documents caused any actual injury in a legal action. On the contrary, plaintiff was able to file the present complaint raising the ETS issue. Accordingly, RUM Forester and Ms. Palmer are entitled to summary judgment on this claim.

### 2. Retaliation

Plaintiff also alleges that RUM Forester "retaliated" against him by upholding Palner's rejection of the mail. Plaintiff's claim fails for two reasons. First, plaintiff has neither alleged nor demonstrated that Forester's retaliatory act arose from plaintiff's engagement in protected activity. *See Smith*, 250 F.3d at 1037; *Thaddeus-X*, 175 F.3d at 394. Plaintiff's bald assertion of retaliation is insufficient to state a cause of action. *See Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937, slip op. at 13-14 (2009) (while Fed. R. Civ. P. 8 does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Second, the court rejects plaintiff's claim that the adverse decision reached in the prison administrative hearing constitutes retaliation. "A finding of guilt based upon some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim.'" *Jackson v. Madery*, 158 Fed. Appx. 656, 662 (6th Cir. 2005), quoting *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir.1994). As in *Jackson*, the misconduct report shows that there was some evidence to support the charges. *See Jackson*, 158 Fed. Appx. at 662; docket no. 14-7.

### E. Constitutional challenge to Policy Directive

Defendants' motion does not address plaintiff's claim that MDOC Policy Directive 05.03.118, "Prisoner Mail," is unconstitutionally vague and overly broad. Accordingly, this claim remains pending.

### IV. Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion for summary judgment (docket no. 13) be **GRANTED**.


Dated: July 22, 2009 /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).