UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMIE MEADE,

        Plaintiff,

v.

MARY BERGHUIS, *et al.*,

        Defendants.

_____/

Case No. 1:08-cv-517

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on defendants' motion to dismiss (docket no. 30). Defendants' motion is unopposed.

    **I.**    **Background**

Plaintiff filed a complaint against ten defendants: Warden Mary Berghuis of the E. C. Brooks Correctional Facility (LRF); LRF Deputy Warden Rick Smith; LRF Deputy Warden Mark Sutherby; LRF assistant resident unit supervisor (ARUS) Carole Hughes; LRF resident unit manager (RUM) Vernelia Shackleford; LRF grievance coordinator Jeff Minnerick; LRF assistant deputy warden (ADW) Bobbie Smith; Warden Carole Howes of the Lakeland Correctional Facility (LCF); LCF mailroom clerk Jennifer Palmer; and LCF RUM Richard Forester.

All claims alleged against defendants have been dismissed except for plaintiff's claim that MDOC Policy Directive 05.03.118, "Prisoner Mail" is unconstitutional. The court previously summarized plaintiff's allegations with respect to the "prisoner mail" issues as follows:

### 3. Retaliation and denial of access to the court by LCF staff

Plaintiff alleges that on February 8, 2008, LCF mailroom clerk Jennifer Palmer rejected certain mail sent to plaintiff by an individual named Pauline Thompson. [Compl. at ¶ 22]. The mail consisted of what plaintiff refers to as "legal materials," and which he describes as "Tobacco Free Housing Applications for various prisoners at LRF, Minor Misconduct violations and Hearing Reports for various LRF prisoners, and LRF store orders and receipts." *Id.* Palmer's notice of rejection stated that plaintiff had "no law suit pending to require this type of information," and cited MDOC Policy Directive 05.03.118 ¶ F 3 as authority for the rejection. *Id.* Plaintiff alleges that Warden Howes and Palmer "failed to act" when he complained to them in a letter dated February 8, 2008. *Id.* at ¶ 23.

LCF Grievance Coordinator Winchester (not a defendant in this action) failed to forward plaintiff a step I grievance form as requested on February 11, 2008. *Id.* at ¶ 24. On February 22, 2008, RUM Forester held an administrative hearing upholding Palmer's rejection of the mail, which plaintiff claims retaliated against him and impeded his access to the courts. *Id.* at ¶ 25. Finally, on February 23, 2008, Grievance Coordinator Winchester failed to provide plaintiff with a requested Step I grievance form to appeal RUM Forester's decision. *Id.* at ¶ 26. Based on these allegations, plaintiff claims that LCF Warden Howes, mailroom clerk Palmer and RUM Forester retaliated against plaintiff and impeded his access to the courts.

### 4. Constitutional challenge to policy directive

Finally, in ¶ 29 of his complaint, plaintiff alleges that MDOC Policy Directive 05.03.118, "Prisoner Mail," is "unconstitutionally vague and overly-broad, because the policy, while not denying complete access to legal materials (i.e. from attorney), prohibits legal materials that are public records that have been acquired by family and friends through the proper Michigan Freedom of Information Act (FOIA) procedures (Michigan prisoners are exempt from all FOIA request, including criminal documents), violating the First and Fourteenth [Amendments] to the U.S. Constitution."

Report and Recommendation at pp. 3-4 (docket no. 27).

### II. Legal Standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468

U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Defendants' have moved to dismiss plaintiff's constitutional attack on the Policy Directive 05.03.118 for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted). In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Churchs Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Association*, 528 F.3d 426, 430 (6th Cir. 2008).

### III. Discussion

Plaintiff has not set forth the language of the policy directive which he seeks to have declared unconstitutional. It appears that plaintiff is referring to the version of Policy Directive

3

05.03.118 D.3. which was in effect on February 8, 2008. *See* Compl. at ¶¶ 22 and 29. The Policy Directive reads in pertinent part as follows:

> Prisoners shall be permitted to send and receive uncensored mail to or from any person or organization unless the mail violates this policy or Administrative Rule 791.6603. Mail shall not be prohibited solely because its content is religious, philosophical, political, social, sexual, unpopular or repugnant. However, mail shall be prohibited if it is a threat to the security, good order, or discipline of the facility, may facilitate or encourage criminal activity, or may interfere with the rehabilitation of the prisoner. This includes the following: . . .
>
> 3.  Mail containing physical contraband, which is defined as any property that a prisoner is not specifically authorized to possess or that is from an unauthorized source. This includes postage stamps, except that a prisoner may receive a single self-addressed envelope from an attorney, a court or a legitimate religious organization.

Policy Directive 05.03.118.D.3. (eff. 01/01/06) (docket no. 14-7).

Plaintiff apparently contests this policy directive on the ground that it prevents him from securing "legal materials that are public records that have been acquired by family and friends through the proper Michigan Freedom of Information Act (FOIA) procedures . . . violating the First and Fourteenth [Amendments] to the U.S. Constitution." Compl. at ¶ 29. Plaintiff further alleged that "Michigan prisoners are exempt from all FOIA request, including criminal documents." *Id.* Plaintiff's argument appears to be that the Policy Directive prevents him from receiving documents from family and friends that he, as a prisoner, is prohibited from obtaining directly. In this case, plaintiff alleged that by rejecting the mail containing these legal materials (which he as a prisoner could not obtain through a FOIA request), defendants impeded his access to the courts. *Id.* at ¶¶ 27-28.

A federal court "has no jurisdiction to pronounce any statute, either of a State or of the United States, void, because irreconcilable with the Constitution, except as it is called upon to

4

adjudge the legal rights of litigants in actual controversies." *United States v. Raines*, 362 U.S. 17, 21 (1960). In exercising its jurisdiction to pronounce a statute unconstitutional, a federal court must rigidly adhere to two rules: "one, never to anticipate a question of constitutional law in advance of the necessity of deciding it; the other never to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." *Id.* (internal quotations omitted).

Here, plaintiff claims that this policy directive is unconstitutional on its face, i.e., that it is "unconstitutionally vague and overly-broad" as to deny Michigan inmates the right to receive legal materials. *See* Compl. at ¶ 29. "Overbreadth is a standing doctrine that allows a person to challenge a regulation as an infringement on the exercise of First Amendment rights even where the regulation may be validly applied to that person." *Bailey v. Carter*, 15 Fed.Appx. 245, 252 (6th Cir. 2001). "[I]n an appropriate First Amendment overbreadth claim, a plaintiff whose conduct is regulated by a rule of law is permitted to challenge the constitutionality of that particular rule of law regardless of the fact that a more circumscribed version of that rule of law could be applied in a constitutional fashion to prohibit the plaintiff's conduct." *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 349-50 (6th Cir. 2007). To prevail on this constitutional challenge, plaintiff "must establish that no set of circumstances exists under which the [challenged policy] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). "While the traditional requirements of standing are relaxed in the context of a facial challenge to a restriction on overbreadth grounds, [a plaintiff] must show that [he] suffered an injury that is 'fairly traceable' to the allegedly unconstitutional statute." *East Brooks Books, Inc. v. Shelby County, Tenn.,* 588 F.3d 360, 367 (6th Cir. 2009). *See also, Prime Media, Inc.* ([e]ven though [the plaintiff] advances an overbreadth challenge, it is thus required to show an injury in fact to challenge the provisions of the ordinance that are yet to be

5

litigated"); *Conn v. Michigan Dept. of Corrections*, 14 F.3d 600, 1993 WL 513944 at *1 (6th Cir. Dec. 9, 1993) ("[w]e have no reason to suppose that the overbreadth doctrine was intended to give every prisoner a roving commission to purge prison regulations of every stray phrase that someone might consider 'overbroad' in a theoretical sense").

Plaintiff's constitutional challenge arose because the policy directive allegedly impeded his access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 355-56 (1996) (to state a claim for interference with access to the courts, a prisoner must show actual injury connected to the pursuit of a non-frivolous legal claims challenging their convictions or conditions of confinement). Specifically, the policy directive barred plaintiff from receiving legal materials that he characterized as "evidence and exhibits needed to file a civil suit" such as "Tobacco Free Housing Applications for various prisoners at LRF, Minor Misconduct violations and Hearing reports for various LRF prisoners, and LRF store orders and receipts." Compl. at ¶¶ 22-23, 27-29. However, plaintiff cannot demonstrate that he suffered an "actual injury" that is fairly traceable to the mail restrictions set forth in the policy directive, because there was no interference with his access to the courts. In this regard, the court previously dismissed plaintiff's claim that defendants interfered with his access to the courts. *See* Report and Recommendation at p. 15 (docket no. 27); Order and Judgment (docket no. 28).[1]

---

[1] Plaintiff's separate claim for interference with his access to the courts was itself dismissed for failure to demonstrate any injury:

> Plaintiff has failed to show that the confiscation of these documents caused any actual injury in a legal action. On the contrary, plaintiff was able to file the present complaint raising the ETS [environmental tobacco smoke] issue.

Report and Recommendation at p. 15 (docket no. 27).

There is no actual controversy before the court in which to determine the constitutionality of this policy directive. *See United States v. Raines*, 362 U.S. 17, 21 (1960) (a federal court "has no jurisdiction to pronounce any statute, either of a State or of the United States, void, because irreconcilable with the Constitution, except as it is called upon to adjudge the legal rights of litigants in actual controversies"). Accordingly, plaintiff's constitutional challenge should be dismissed.

### IV. Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion to dismiss (docket no. 30) be **GRANTED** and that this lawsuit be dismissed.


Dated: July 26, 2010                               /s/ Hugh W. Brenneman, Jr.
                                                   HUGH W. BRENNEMAN, JR.
                                                   United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).